IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| KENNETH KERR, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF RAY EUGENE KERR, DECEASED, AND AS PERSONAL REPRESENTATIVE OF AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF DECEDENT RAY EUGENE KERR | § § § § § § § § § | PLAINTIFF |
| v. | § § | CAUSE NO. 1:09cv482-LG-RHW |
| PHILLIP MORRIS USA, INC., and JOHN DOES 1-100 | § § | DEFENDANTS |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

BEFORE THE COURT is Defendant Phillip Morris USA, Inc.'s Motion to Dismiss [5], pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Kenneth Kerr brings this action for Ray Eugene Kerr's death, which was allegedly caused when a Phillip Morris cigarette started a fire. Phillip Morris argues that all claims fail because the risk of fire is a cigarette's (1) inherent characteristic (2) which is known by the ordinary consumer in the community and (3) the cigarette did not fail to function as expected. The Court has considered the parties' submissions and the relevant legal authority. The motion is granted as to the defective design claim brought under the Mississippi Products Liability Act. The remainder is denied.

**FACTS AND PROCEDURAL HISTORY**

This is both a wrongful death and survival action. According to the Complaint, Ray died in a house fire. The fire was caused by a lit Phillip Morris cigarette. Kenneth alleges that it was defectively designed because it was not a self extinguishing cigarette. He claims that had the

cigarette been a self-extinguishing cigarette, the fire would not have occurred. Further, he alleges the cigarette was:

> designed, manipulated, manufactured, and marketed in a way to make [it] unreasonably dangerous to end-users of the product. Phillip Morris' product was unreasonably dangerous because Phillip Morris manipulated and designed the tobacco product in a manner that caused an unreasonable risk of fire. A safer alternative design, such as a self-extinguishing cigarette, was available at the time the cigarettes were manufactured.

(Compl. at 3 (¶8)). The Complaint charges strict products liability for defective design and manufacture. The Complaint also charges negligence, gross negligence, and deceptive marketing.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, Kenneth must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). *See also*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"). This does "not require heightened fact pleading of specifics." *Bell Atlantic*, 550 U.S. at 570. It "does not require 'detailed factual allegations.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555-56. The Court must view the facts in favor of the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).

The complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the

statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Bell Atlantic*, 550 U.S. at 555) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

MPLA DESIGN DEFECT

The Mississippi Products Liability Act provides that a manufacturer may be liable for a strict products liability defective design claim. Miss. Code Ann. § 11-1-63(a)(i)(2). As part of the prima facie case, the plaintiff must prove the "product failed to function as expected." Miss. Code Ann. § 11-1-63(f)(ii).

Phillip Morris argues that Kenneth has not and cannot allege that the cigarette failed to function as expected because it had to be lit and burn in order to function. Kenneth concedes that it is expected that a cigarette has to be lit and burn. He maintains that his case is different because he is complaining about an "increased risk" of fire caused by the chemicals added to the tobacco and paper, by Phillip Morris. Specifically, he responds:

> However, it is unknown to consumers and thusly unexpected that chemicals and compounds are added to the paper to cause them to burn longer. As a result, the danger of the cigarette fire is unexpectedly increased. Consumers take a certain amount of risk with any product they purchase and use. However, consumers cannot be expected to recognize hidden dangers, especially those actively concealed by the manufacturer. Thus, even though the cigarette did light and burn, it did so at a faster rate, resulting in increased danger to Plaintiff, and thus failed to function as expected.

(Pl.'s Resp. at 10).

The Complaint does not mention these additives or the increased risk of fire caused by them. The closest allegation is that the cigarettes were "manipulated . . . in a way to make them unreasonably dangerous to end-users . . . . Phillip Morris manipulated and designed the tobacco

product in a manner that caused an unreasonable risk of fire." (Compl. at 3 (¶8)). The rest of the paragraph reads that it is the failure to make a self extinguishing cigarette that caused the fire here. The Complaint does not contain fair notice of the allegations Kenneth now makes, which is that the tobacco and paper were laced with additives and these caused the harm. Rather, the Complaint, to which this Court is confined, states that it is the lack of a self extinguishing design that caused the fire. Because he has conceded that a cigarette does not otherwise fail to function as expected when it lights and burns, and because he has failed to give fair notice of the allegations he now makes, he has failed to state a claim for design defect under the MPLA. This claim is dismissed without prejudice.

NON-MPLA CLAIMS

Phillip Morris argues that the Mississippi Products Liability Act applies to all of Kenneth's claims, regardless of how they are labeled. When Phillip Morris or its attorneys have raised this very argument before the Mississippi Supreme Court, it rejected the premise. *Watson Quality Ford, Inc. v. Casanova*, 999 So. 2d 830, 833 (¶8) (Miss. 2008); *R. J. Reynolds Tobacco Co. v. King*, 921 So. 2d 268, 270 (¶9) (Miss. 2005). The MPLA is not the exclusive remedy for a claim based on a defective product. *Watson Quality*, 999 So. 2d at 833 (¶8); *R. J. Reynolds*, 921 So. 2d at 272 (¶17); *Bennet v. Madakasira*, 821 So. 2d 794, 808 (¶52) (Miss. 2002).

In *R. J. Reynolds*, *Bennet*, and the present case, the defendant argued that the first sentence in the MPLA, "in any action for damages caused by a product," meant that the MPLA was abrogating all other causes of action. *R. J. Reynolds*, 921 So. 2d at 273-74 (¶24); *Bennet*, 821 So. 2d at 808 (¶52). Both times, the Mississippi Supreme Court rejected this argument, holding that the statute clearly only applied to products liability actions and did not clearly

abrogate all others. *R. J. Reynolds*, 921 So. 2d at 274 (¶24); *Bennet*, 821 So. 2d at 808 (¶52). For this reason, *R. J. Reynolds* held that the inherent characteristic defense, found in the MPLA, only applies to actions brought pursuant to the MPLA and not "other possible theories of recovery." *R. J. Reynolds*, at 272 (¶15). "The inherent characteristic *defense* in *subsection (b) of § 11-1-63* does *not* bar 'any action for damages caused by' cigarettes. First, the inherent characteristic defense applies only to a products liability action. One would not expect to see this defense pled in any other type of liability action." *Id.* at (¶¶16-17). The non-MPLA claims therefore survived, including misrepresentation, conspiracy to defraud, deceptive advertising, and wrongful death. *Id.* at 270 (¶¶7-9).

More recently, *Watson Quality* repeated, "We find no statutory requirement that makes MPLA the exclusive remedy for claims of malfunctioning automobiles." *Watson Quality*, 999 So. 2d at 833 (¶8). The court went on to consider the non-MPLA claims of implied warranties and negligence. *Id.* at 833-35 (¶¶9-14).

Phillip Morris argues that some courts in this district have ruled the non-MPLA claims were barred by the MPLA. First, this Court is bound by the Mississippi courts' pronouncements of Mississippi law. Second, not all of the Mississippi federal courts have held these claims were abrogated. *See, e.g.*, *Childs v. Gen. Motors Corp.*, 73 F. Supp. 2d 669, 672 (N.D. Miss. 1999).

Third, the district court cases that have held the MPLA abrogates common law claims are based on those courts' reading of *Palmer*. *See, e.g.*, *Jowers v. BOC Group, Inc.*, 2009 U.S. Dist. LEXIS 53126 at *10 (S.D. Miss. Apr. 14, 2009) (O'Malley, J.) (finding case law inconsistent because of *Palmer*). In *Palmer*, the plaintiff brought both negligence and MPLA claims. The trial court granted a directed verdict as to the negligence claims "after concluding that the

negligence claims were redundant because the court was instructing the jury on the Palmers' claims . . . under the MPLA." *Palmer v. Volkswagen of Am., Inc.*, 905 So. 2d 564, 599 (¶130) (Miss. Ct. App. 2003). Although the issue presented in *Palmer* was whether the trial court correctly granted a directed verdict, *Palmer* held that it was not error to fail to instruct the jury on the negligence claim. *Id.* at 600 (¶132). This was not because it was abrogated by the MPLA. *Id.* Rather, this was because the products liability claim was governed by the risk-utility test. *Id.* This test is essentially a negligence formulation. *Id.* Therefore, *Palmer* found that there was no error because the jury was in fact instructed on negligence. *Id.* The court reasoned:

> Mississippi applies the risk-utility test for determining whether a product has a design defect. . . . [B]ecause the risk-utility test requires the jury to reach a conclusion about the manufacturer's conduct, the test is a version of Judge Learned Hand's negligence calculus. Therefore, . . . a jury performing risk-utility analysis necessarily makes a negligence determination. . . . In the case *sub judice*, the jury was properly instructed on the Palmers' claim of design defect under the MPLA, and additional negligence instructions would have been redundant.

*Id.* "Where, as here, the jury is instructed pursuant to the MPLA, the court *need not* present the jury with a separate negligence *instruction*." *Id.* at (¶133) (emphasis added). *Palmer* relied on cases that held only that it was not error to refuse to instruct the jury twice on negligence. None of these cases held that the MPLA was the exclusive remedy. The *Palmer* line of cases are not inconsistent with the *Bennet* line of cases, which hold that the MPLA is not the exclusive remedy and the affirmative defenses available in the MPLA do not apply to other causes of action.

It is worth noting that in the end, *Jowers*, too, based its decision on whether or not it should instruct the jury separately on the negligence claim. "Perhaps most important, however, is that *regardless* of whether Jowers' negligence claims are wholly abrogated by the MPLA, it is clear that this Court's decision to instruct the jury only on Jowers' MPLA claims is not error."

*Jowers*, at *18.

The Court holds that the MPLA does not preclude Kenneth's other causes of action.

**IT IS THEREFORE ORDERED AND ADJUDGED**, that for the reasons stated above, Defendant Phillip Morris USA, Inc.'s Motion to Dismiss [5] should be and is hereby **GRANTED** as to the defective design products liability claim. This claim is dismissed without prejudice. The remainder of the motion is **DENIED.**

**SO ORDERED AND ADJUDGED** this the 25th day of March, 2010.

s/ *Louis Guirola, Jr.*
Louis Guirola, Jr.
United States District Judge